UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CYNTHIA CORRIE, *et al.*,

　　　　Plaintiffs,

　v.

CATERPILLAR, INC., a foreign corporation,

　　　　Defendant.

Case No. C05-5192FDB

ORDER GRANTING DEFENDANT CATERPILLAR'S MOTION TO DISMISS

## INTRODUCTION

Plaintiffs are the family of Rachel Corrie, who died in the Gaza Strip in 2003, and a number of Palestinians who live in the Gaza Strip and the West Bank. Since the 1967 "Six Day War," Israel has controlled the areas known as the Gaza Strip, the West Bank, the Sinai Peninsula, and the Golan Heights. Plaintiffs allege that they have suffered death, injury, and the loss of home and business as a result of the demolitions by Caterpillar bulldozers used by the Israeli Defense Forces (IDF). Plaintiffs have alleged seven claims against Caterpillar: (1) war crimes (breach of the Geneva Convention); (2) extrajudicial killing (defined in Torture Victim Protection Act); (3) aiding and abetting, conspiring in, or ratifying cruel, inhuman, or degrading treatment or punishment in violation of the law of nations; (4) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO); (5) wrongful death; (6) public nuisance, and (7) negligence.

ORDER - 1

Plaintiffs seek compensatory and punitive damages, reasonable attorneys fees and costs and injunctive and declaratory relief including an order directing Caterpillar to cease providing equipment and services to the Israeli Defense Forces until the conduct described in the First Amended Complaint ceases.

Caterpillar moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and pursuant to the political question and act of state doctrines. Caterpillar argues that there is no legal basis for the allegation that Caterpillar can be liable in damages for selling a legal, non-defective product to the government of Israel; the federal statutory claims (RICO, Torture Victim Protection Act) fail for numerous reasons and for failure to exhaust remedies available in Israel; and no violation of international law is stated. Finally, Caterpillar argues that the injunctive relief that Plaintiffs seek is a political goal that is inappropriate to pursue in this lawsuit.

## DISCUSSION

**First, Second, and Third Claims for Relief**

In the First Claim, Plaintiffs allege that the home demolitions and attack on Plaintiffs and decedents constitute "war crimes" in violation of the Fourth Geneva Convention. Plaintiffs allege that Caterpillar knew or should have known that the bulldozers it was supplying to the IDF would be used to commit violations of the Geneva Convention. Plaintiffs contend that Caterpillar's acts and omissions violate the law of nations or a treaty of the United States under 28 U.S.C. §§ 1350 and 1331.

In the Second Claim, Plaintiffs allege that the killings of the decedents listed in the First Amended Complaint were deliberate and not authorized by previous judgment from a regularly constituted court and thus constitute "extrajudicial killings" as defined by the Torture Victim Protection Act ,Pub. L. No. 102-256, 106 Stat. 73 (1992)(codified at 28 U.S.C. § 1350 (note); and that the killings also violate the law of nations and, thus, the United States, pursuant to 28 U.S.C. §§ 1331 and 1350. Plaintiffs allege that Caterpillar knew or should have known that the bulldozers it

ORDER - 2

was supplying would be used to commit human rights abuses and that the extrajudicial killings were foreseeable.  Plaintiffs also allege that Caterpillar gave substantial assistance to the IDF in several ways, thus aiding and abetting, conspiring or ratifying the extrajudicial killings.

In the Third Claim, Plaintiffs allege that the abuses described in the First Amended Complaint constitute cruel, inhuman, or degrading treatment or punishment (CIDTP).   Plaintiffs allege that Caterpillar knew or should have known that the bulldozers it was supplying to Israel were being used to commit CIDTP, thus Caterpillar aided and abetted, conspired in, or ratified this CIDTP. Defendants contend that Caterpillar's acts and omissions violate the law of nations, and thus the United States pursuant to 28 U.S.C. §§ 1331 and 1350.

Caterpillar argues that it is not liable for the Israeli government's alleged conduct, because Caterpillar did not control the Israeli Defense Forces; there is no federal tort for "doing business" with a country that allegedly violates international law; there is no universally recognized norm of international law that is sufficiently definite to satisfy the requirements of *Sosa v. Alvarez-Machain*, 542 U.S. 692, 124 S. Ct. 2739 (2004); Caterpillar was not a "state actor"; and no provision of federal law allows the Corrie plaintiffs to sue for violations of international law.

Caterpillar also argues that Plaintiffs' allegations of "extrajudicial killing under the Torture Victim Protection Act (TVPA) fail to state a claim because Plaintiffs have not exhausted their remedies in Israel; Caterpillar did not act under "color of law" of a "foreign nation"; Caterpillar did not participate in any alleged killings nor aid and abet the Israeli soldiers involved in the incident simply by selling bulldozers; and the TVPA does not apply to corporations.

**Analysis and Conclusion re First, Second, and Third Claims**

Title 28 U.S.C. § 1350, entitled "Alien's action for tort," provides as follows:

> The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.

The Torture Victim Protection Act is set forth in the Historical and Statutory Notes section to

ORDER - 3

Section 1350. The relevant section provides:

> (a) Liability. – An individual who, under actual or apparent authority, or color of law, of any foreign nation –
> (1) subjects an individual to extrajudicial killing shall, in a civil action be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

Plaintiffs fail to state a claim in their First, Second, and Third claims for relief because Plaintiffs do not allege that Caterpillar participated in or directed any of the IDF's challenged conduct. Selling products to a foreign government does not make the seller a participant in that government's alleged international law violations. In *In re South African Apartheid Litig.*, 346 F. Supp. 2d 538 (S.D.N.Y. 2004)(hereafter "*Apartheid Litigation*"), the plaintiffs alleged that various United States corporations violated international law by doing business with the apartheid regime in South Africa. The court rejected the claim concluding that "[t]he apartheid regime, and not defendants, engaged in the behavior that is the subject of [the alleged violations]." *Id.* at 552 n. 16.

In *Sosa v. Alvarez-Machain*, 542 U.S. 692, 124 S. Ct. 2739 (2004), the Court considered the types of claims a plaintiff may assert under the Alien Tort Statute, 28 U.S.C. § 1350, which provides federal jurisdiction "by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." The Court directed federal courts to exercise "great caution" in adapting the law of nations to private rights, *Sosa*, 542 U.S. at 728, 124 S. Ct. at 2764, and articulated several reasons for such caution, including possible "collateral consequences" to the foreign relations of the United States flowing from private allegations of a foreign government's violations of the law of nations and also the lack of a "congressional mandate to seek out and define new and debatable violations of the law of nations. ..." *Id.* at 728, and 2763. The Court concluded: "Accordingly, we think courts should require any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized,." that is, violation of safe conducts, infringement of the rights of ambassadors, and piracy. *Id.* at 725, 2761.

ORDER - 4

*Apartheid Litigation* is on point: the plaintiffs alleged that defendants "supplied resources, such as technology, money and oil" that the South African government used to further its policies of oppression and persecution. For example, the allegations were that demonstrators were shot from automobiles equipped with Daimler-Benz engines, individuals were tracked using IBM computers, and the military kept machines in order using oil supplied by Shell. Plaintiffs claims were dismissed, and in doing so, the Court considered the "collateral consequences" of recognizing "a new international law violation." The Court recognized that the consequences from a lack of caution "could have significant, if not disastrous effects on international commerce." *Id.* 346 F. Supp. 2d at 554. Moreover, there is the danger recognized by *Sosa* of "impinging on the discretion of the Legislative and Executive branches in managing foreign affairs." *Id.* 542 U.S. at 728, 124 S. Ct. at 2763.

Plaintiffs allege that the alleged killings violate the law of nations, and thus, the law of the United States and international multilateral treaties and international instruments, as well. The Torture Victims Protection Act (TVPA) provides the exclusive remedy for plaintiffs who allege extrajudicial killing under color of foreign law. *Enahoro v. Abubakar*, No. 03-3089, 2005 U.S. App. LEXIS 9353 (7th Cir. May 23, 2005). Plaintiffs contend that this case was wrongly decided, but they rely on cases decided prior to *Sosa*. Article 53 of the Fourth Geneva Convention, cited by Plaintiffs, states that destruction of personal property is prohibited "except where such destruction is rendered absolutely necessary by military operations." This does not set a clear, specific norm. The 1999 Yugoslavian Final Report, recommending against investigation of NATO's bombing target selection during the Kosovo war, noted that resolution of questions about the proportionate use of force may have to be done on a case-by-case basis and the answers "may differ depending on the background and values of the decision maker." This subjective view or norm requiring a case-by-case review is not sufficient under *Sosa* as it does not "rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18[th]-

ORDER - 5

century paradigms we have recognized." *Sosa* at 725, 2761.  Moreover, the Geneva Convention is not "self-executing," that is, it does not expressly or impliedly create a private claim for relief.  *See, e.g., Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 439 n.16 (D.N.J. 1999)("Courts have unanimously held that neither the Hague nor Geneva Conventions are self-executing.")

      The TVPA requires a plaintiff to seek compensation abroad before suing in the United States, and while Plaintiffs argue that their specific claims must be recognized in the foreign court, the statute merely provides that there be "adequate and available remedies" abroad.  28 U.S.C. § 1350.  A foreign remedy is adequate even if not identical to remedies available in the United States.  Courts usually find a foreign remedy adequate unless it "is no remedy at all."  *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981)(foreign remedy was adequate despite the fact that a strict liability theory was unavailable).  Israeli tort law provides adequate remedies for plaintiffs injured as a result of tortious conduct.  Supp. More Decl., ¶¶ 6-9.  In fact, it appears that Rachel Corrie's family filed a claim in Israel in about March 2005.  (See Dkt. # 25 Request for Judicial Notice.)  It has been recognized in other cases that Israel's courts are generally considered to provide an adequate alternative forum for civil matters.  *See, e.g., Diatronics, Inc. v. Elbit Computers,* 649 F. Supp. 122, 127-29 (S.D.N.Y. 1986); *Postol v. El-Al Israel Airlines, Ltd.*, 690 F. Supp. 1361 (S.D.N.Y. March 12, 2004).

      Additionally, the Ninth Circuit has held that "[o]nly individuals who have acted under official authority or under color of such authority may violate international law."  *In re Estate of Marcos Human Rights Litig.*, 978 F.2d 493, 501-02 (9th Cir. 1992)(citing *Tel-Oren v. Libyan Republic,* 726 F.2d 774, 791-95 (D.C. Cir. 1984).  *See also Apartheid Litigation,* 346 F. Supp. 2d at 548 (the color of law provision requires that a private individual "'act together with state officials or with significant state aid.'" (quoting *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 448 (2d Cir. 2001)).  Courts have also looked to civil rights cases to analogize from the "color of law" requirement under 28 U.S.C. 1983, and under that statute, a private individual must control the state official's commission of the

ORDER - 6

challenged acts, thus establishing proximate cause. *See Arnold v. IBM* 637 F.2d 1350, 1355-56 (9th Cir. 1981).   There are no facts alleged to support a claim that Caterpillar controlled or participated in the IDF soldiers' alleged conduct.

Finally, claims under the Alien Tort Claims Act (28 U.S.C. § 1350 "Alien's action for tort") may not be brought by the family of Rachel Corrie because they are not aliens, and therefore, cannot assert federal claims derived from international law.   Moreover, while no circuit court has yet ruled on the matter, a court in California has concluded that the statutory language of the TVPA precludes a corporation from being a victim or a perpetrator. *See, Mujica v. Occidental Petroleum Corp.*, 2005 WL 196235 (C.D. Cal. 2005).   This court so concludes as well, since the statute speaks in terms of individuals, and the rationale of *Mujica,* that "individual" must mean the same thing with respect to both victim and perpetrators, is reasonable.

Plaintiffs argue that this court can, under *Sosa* legitimately adjudicate plaintiffs' human rights violations claims under the ATS as long as they seek to recover for violations of international norms that are "specific, universal, and obligatory."   The question, however, is whether the facts alleged by Plaintiff in this case against Caterpillar meet the *Sosa* standard. *See Doe v. Liu Qi*, 349 F. Supp. 2d 1258 (N.D. Cal. 2004)("[t]he question of whether a claim under the ATS lies thus turns on whether the *specific facts* (not the general characterization of the claim) violates international norms that are 'specific, universal and obligatory.'"*See also Mujica v. Occidental Petroleum Corp.*, 2005 WL 1962635 (C.D. Cal. 2005)(dismissing cruel, inhuman and degrading treatment claim based on the facts alleged.).   The conduct alleged against Caterpillar in this case – selling a legal, non-defective product to Israel – does not meet the standard.   The Court in *Apartheid Litigation, supra,* concluded that there was no actionable international norm that prohibited companies from doing business with the South African apartheid regime despite the regime's use of the defendants' products for human rights violations.   It should also be noted that the Covenant on Civil and Political Rights as a source of international law supporting plaintiff's claims in *Sosa* was rejected as "it was not self-executing

ORDER - 7

and so did not itself create obligations enforceable in the federal courts." *Sosa*, 542 U.S. at 735, 124 S. Ct. at 2767.

Plaintiffs' claims for aiding and abetting, or accessory liability, fail for several reasons. While international law may recognize accomplice liability in some instances, the conduct alleged must first rise to the level of a claim under *Sosa*. Plaintiffs' claim of aiding and abetting fails because where a seller merely acts as a seller, he cannot be an aider and abettor; "a supplier joins a venture only if his fortunes rise or fall with the venture's, so that he gains by its success." *United States v. Blankenship*, 970 F.2d 283, 285-87 (7th Cir. 1992). One who merely sells goods to a buyer is not an aider and abettor of crimes that the buyer might commit, even if the seller knows that the buyer is likely to use the goods unlawfully , because the seller does not share the specific intent to further the buyer's venture. *See, id., e.g,*. Similarly, a seller of goods to someone who uses it to commit a crime is not a conspirator. *See id.* at 285. Also, an aiding and abetting claim is inconsistent with the TVPA's explicit requirement that a defendant must have acted under "color of law." *Apartheid Litigation*, 346 F. Supp. 2d at 555. A theory of accessory liability does not obtain in this case because there is no allegation of the right or ability to control the Israeli soldiers' conduct. A "ratification" theory does not apply either because there are no facts to support a claim that Caterpillar acted as the IDF's agent.

Plaintiffs file a surreply contending that Caterpillar raised certain arguments for the first time in its reply. First, Plaintiffs cite Caterpillar's argument that claim of cruel, inhuman, and degrading treatment was too vague to support a claim under *Sosa* and ask that that section of the reply brief be stricken or that Plaintiffs be allowed leave to respond to the argument. Plaintiffs' assertion is wholly without merit. The *Sosa* argument was raised in Caterpillar's opening brief where various other arguments applying to the First, Second, and Third claims for relief were argued. Plaintiffs' assertion that the notice and causation issues that Caterpillar argued was a new argument to them is incomprehensible because they could have made their arguments for causation and notice

ORDER - 8

in their 90-page brief rebutting the arguments Caterpillar made in its opening brief as to the First, Second, and Third claims, particularly since causation is a crucial element in alleging a tort.

### Fourth Claim for Relief

Plaintiffs' Fourth Claim for relief alleges violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) in that from not later than 1999, Caterpillar and its agents and/or co-conspirators, including the IDF, formed a RICO "enterprise" engaged in foreign and interstate commerce and engaged in a pattern of racketeering activity including murder, robbery, extortion, physical violence resulting in serious bodily injury to a United States national, and violation of the Hobbs Act. All of this derived from Caterpillar's manufacture, design, financing sales, servicing, and training of the IDF with respect to its bulldozers.

### Analysis and Conclusion re RICO Claim

For the following reasons, Plaintiffs fail to state a RICO claim.

The RICO statute (18 U.S.C. § 1962(c)) provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"In order to state a claim under section 1962(c), a plaintiff must allege the following:  1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity." *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1310 (9th Cir. 1992), citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285 (1985).   Section 1961(4) defines an "enterprise" to include "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." This element requires allegations sufficient to show an organization, "formal or informal," that is "'an entity separate and apart from the pattern of [racketeering] activity in which it engages.'" *Chamg v. Chen*, 80 F.3d 1293, 1298 (9th Cir. 1996)(quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

ORDER - 9

"Racketeering activity" is defined as violations of specified laws, including

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is **chargeable under State law** and punishable by imprisonment for more than one year.

18 U.S.C. § 1961(1)(emphasis added).

Caterpillar argues that Plaintiffs have failed to allege a RICO enterprise or conduct sufficient to state a RICO claim. Plaintiffs argue that they have alleged facts from which Caterpillar's agreement to participate in the affairs of the enterprise can be inferred; that is, Caterpillar "knew that its bulldozers were being used to commit predicate acts but nevertheless continued to develop, sell, maintain, and train members of the IDF to use the equipment necessary to the commission of the predicate acts.

Plaintiffs' argument fails. It is too great a leap to conclude that the commercial relationship between Caterpillar and the government of Israel can arise to an "enterprise" that may be inferred from the IDF's use of the bulldozers.

Caterpillar argues that Plaintiffs have not alleged a "pattern of racketeering activity" because the property destruction and killings alleged in the Complaint do not constitute crimes under Washington law because they did not occur in or affect Washington.

Plaintiffs respond that the state offenses are included by generic designation and serve to identify generally the kind of activity made illegal by the federal statute, citing *United States v. Bagaric*, 706 F.2d 42, 62 (2d Cir. 1983), and that the reference was not intended to incorporate the elements of the state crimes. *United States v. Miller*, 116 F.3d 641, 645 (2d Cir. 1997). Plaintiffs also argue, without giving any specifics, that even if the reference to state crimes incorporated the location of the offense, the fact that preparatory acts occurred within the jurisdiction of Washington would be sufficient to meet the jurisdictional requirements.

That portion of the statute quoted above defining "racketeering activity" provides that the

ORDER - 10

crimes must be "chargeable under state law." Case law from the Second Circuit later than *Miller, supra*, concluded from the language of the RICO statute enumerating certain federal statutes and state offenses *"chargeable under State law"* and punishable by imprisonment for more than one year "seem[ed] to require of a predicate act based on state law that the act include the essential elements of the state crime." *United States v. Carrillo*, 229 F.3d 177, 185-86 (2d Cir. 2000). The requirement of a local connection and incorporation of the crime's elements is reasonable, otherwise, the criminal activity alleged could become too attenuated from the statutory definitions. Plaintiff's suggestion that Caterpillar's "preparatory" activity in Washington would be sufficient to satisfy the statute fails, because the "conduct in the United States cannot be merely preparatory ... and must be material, that is, directly cause the losses." *Grunenthal GmbH v. Hotz*, 712 F.2d 421, 424 (9th Cir. 1983). Caterpillar's design, manufacture, export and the like is not the conduct that allegedly caused the harm.

Caterpillar argues that Plaintiffs have failed to allege a Hobbs Act extortion claim because that Act "require[s] not only the deprivation but the acquisition of property." *Scheidler v. Nat'l Org. For Women*, 537 U.S. 393, 404 (2003)(citing *United States v. Enmons*, 410 U.S. 396, 400 (1973). In response to this argument, Plaintiffs concede that the law is correct but argue that the First Amended Complaint alleges that the IDF took Plaintiffs' property to create "buffer zones." This argument stretches the requirement of acquisition of property to the breaking point. No Hobbs Act violation is stated.

Caterpillar argues that Plaintiffs have not alleged a direct causal relationship between Caterpillar's conduct and their alleged injuries. To maintain a cause of action under RICO, "a plaintiff must show not only that the defendant's violation was a 'but for' cause of his injury, but that it was the proximate cause as well." *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994). Proximate causation under RICO "requires that there must be a direct relationship between the injury asserted and the injurious conduct alleged." *Id.* Caterpillar argues that its

ORDER - 11

manufacture and sale of tractors was not the "but-for" cause of Plaintiff's injuries, as IDF did not need to use Caterpillar products to demolish houses; neither is Caterpillar's manufacture and sale of tractors the proximate cause of Plaintiffs' injuries; rather the independent, intervening conduct of IDF soldiers was the cause.

Plaintiffs respond to this argument asserting that "the ongoing provision of an instrumentality to an entity known to be using that instrumentality to destroy homes, lives, and businesses – resulted directly in the harms suffered by Plaintiffs." Plaintiffs also attempt to distinguish *Pillsbury* as a case involving harm to a third person, whereas that was not the case as to Caterpillar's conduct, which directly harmed Plaintiffs.

Plaintiffs argument fails because Caterpillar's sale of its products to the government of Israel was not the cause of the alleged injuries, that is, it was not "a substantial factor in the sequence of responsible causation." *See Oki Semiconductor Co. v. Wells Fargo Bank Nat'l Assoc.*, 298 F.3d 768, 773 (9th Cir. 2002). There is no direct causal relationship between Plaintiffs' injuries and Caterpillar's sales of bulldozers to Israel. Caterpillar merely sold bulldozers. The IDF used them. Caterpillar's sale of products to the Israeli government is too attenuated from the events about which Plaintiffs complain to be either the "but-for" or "proximate" cause of Plaintiffs' injuries.

Caterpillar argues that Plaintiffs' RICO conspiracy claim also fails for the lack of any substantive RICO violation and the lack of a factual basis for a conspiracy. Caterpillar argues that because Plaintiffs have failed to plead an actionable substantive RICO claim, they may not maintain a RICO conspiracy claim. Moreover, Plaintiff's conspiracy allegations are insufficient in any event because the allegation merely states a conclusion. "To state a claim for conspiracy to violate RICO, 'the complaint must allege some factual basis for the finding of a conscious agreement among the defendants.'" *Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1069 (C.D. Cal. 2000)(quoting *Hecht v. Commerce Clearing House*, 897 F.2d 21, 26 n. 4 (2d Cir. 1990)).

Plaintiffs respond that they have sufficiently alleged substantive RICO violations and that

ORDER - 12

there are sufficient facts from which one can infer that Defendant knew that its bulldozers were being used to commit predicate acts and that Defendant continued to develop, sell, and maintain the equipment and to train IDF members in use of the equipment.

Plaintiffs' argument is frivolous and fails for the reason asserted by Caterpillar.

### **Fifth, Sixth and Seventh Claims for Relief**

Plaintiffs' Fifth Claim asserts wrongful death brought by four plaintiffs on behalf of their decedents; Plaintiffs assert that Defendant owed a duty to the decedents because they were foreseeable victims of IDF's illegal use of the bulldozers based on previous notice Defendant received.

Plaintiff's Sixth Claim asserts public nuisance, contending that the Palestinian public and non-Palestinian civilians in the area have a right to health, the public safety, public peace, public comfort, and/or public convenience, which rights have been interfered with by Defendant by supplying or repairing, among other things, bulldozers used to destroy homes.

Plaintiff's Seventh Claim for negligence asserts that Defendant owed a duty to Plaintiffs and decedents because they were foreseeable victims of IDF's illegal use of Defendant's bulldozers, and Defendant breached that duty by supplying, selling, and/or entrusting, among other things, bulldozers used to destroy homes.

### **Analysis and Conclusion re Fifth, Sixth, and Seventh Claims**

Caterpillar argues that under Washington's choice of law principles, Israeli law applies to Plaintiffs' claims, because Israel is the state where the injury occurred. Israeli law generally applies common law doctrines derived from English jurisprudence, and these doctrines require a plaintiff to show causation. These principles are substantially the same as those applied in the United States of America, including under Washington and Illinois law (Caterpillar's principal place of business). Under principles of causation and duty, Plaintiffs do not state a claim by alleging the lawful sale of a non-defective product that a customer intentionally used to injure a third party. *See Young v. Bryco*

ORDER - 13

*Arms*, 213 Ill.2d 433 (2004); *Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 414 (2004); *Knott v. Liberty & Loan, Inc.*, 50 Wash. App. 267, 273-74 (1988). Both these cases struck down such claims against manufacturers and distributors on the ground that they owed no duty of care to third parties injured by non-defective products. For example, the court in *Young* reasoned that "[i]f the defendant's conduct merely furnishes a condition by which injury is made possible, and a third person, acting independently, subsequently causes the injury, the defendant's creation of the condition is not a proximate cause of the injury." 213 Ill. 2d at 449. Caterpillar argues that "Permitting claims against the manufacturers of legal, non-defective products results in those manufacturers being the insurer of all criminal acts committed using such products, merely on the basis that such businesses lawfully placed such products into the stream of commerce. *See Cherry v. General Petroleum Corp. Of California*, 172 Wash. 688, 695 (1933)(noting that the concept of legal cause prevents one from becoming the insurer of remote events.).

      Plaintiffs argue that the law of the forum state, Washington, applies in this case because none of the Plaintiffs or Defendant reside in Israel and the injuries did not occur there, they occurred in Gaza and the West Bank. Plaintiffs contend there are conflicts in what the law of Israel provides and what Washington provides; in such a case, Washington's conflict of laws principles require that the law of the state where the injury occurred applies, unless another state has a greater interest. Plaintiffs assert that the place where the conduct causing injury occurred – the distribution/sale of the Caterpillar bulldozer – likely occurred in Illinois. Thus, Plaintiffs argue that either Washington or Illinois law applies, and the law of Israel is least likely to apply.

      Plaintiffs' argument fails under whatever law is applied, as Plaintiffs do not state a claim by alleging the lawful sale of a non-defective product to a customer who intentionally uses it to injure a third party. Plaintiff have the burden of providing reasonable notice of their intention to rely on foreign law under Fed. R. Civ. P. 44.1, but Plaintiffs do not assert that foreign law applies, arguing, instead, that Illinois law applies as that is where the injury-causing conduct occurred. Plaintiffs argue

ORDER - 14

that although it may be true that under a general negligence theory, manufacturers of legal products do not owe a duty of care to persons who might be injured by a third party's illegal use of those products absent a special relationship, this rule does not apply to negligent entrustment.

The negligent entrustment theory is unavailing. Negligent entrustment requires the following: (1) a negligent entrustment, and (2) incompetence of the entrustee that is a proximate cause of the injury. *See State Farm Fire & Casualty Co. v. McGlawn*. 84 Ill. App. 3d 107, 110 (1980); *Bernethy v. Walt Failor's Inc.,* 97 Wash. 2d 929, 933 (1982); *Evans v. Shannon*, 2001 Ill. 2d 424, 434 (2002). There is no showing that the Israeli government fits into the category of an incompetent.

Plaintiffs argue that manufacturers of legal products owe a duty of care to persons who are injured by a third party's foreseeable illegal use of those products, except where there are unexpected intervening actions of unknown criminals for which defendants have no knowledge, in which case, there is no foreseeability. Here, argue Plaintiffs, the IDF's use of the bulldozers was foreseeable.

Plaintiffs' argument fails because the IDF's conduct, or that of individuals in the IDF, is too remote from the sale of the bulldozers to the Israeli government to hold Caterpillar liable for any alleged misuse of the bulldozers by a third party. Plaintiffs' wrongful death and public nuisance claims fail as well under the foregoing analysis. A manufacturer or distributor of non-defective, legal products cannot be liable in tort for alleged criminal acts committed with those products by third parties.

**Foreign Policy Issues**

This case must also be dismissed because it interferes with the foreign policy of the United States of America. "Questions in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). Six factors for determining whether a court should defer a case to the political branches of government were articulated in *Baker v. Carr*, 369 U.S. 186 (1962): (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department;

ORDER - 15

or (2) a lack of judicially discoverable and manageable standards for resolving it; or (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question. *Id*. at 217. Dismissal is appropriate if any one of these six factors is "inextricable" from the case. *Alperin v. Vatican Bank*, 410 F.3d 532, 544 (9th Cir. 2005).

In this case, neither of the other branches of government has urged or enjoined sale of weapons to Israel nor restrained trade with Israel in any other manner. For this court to preclude sales of Caterpillar products to Israel would be to make a foreign policy decision and to impinge directly upon the prerogatives of the executive branch of government. For example, in *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 383-86 (2000), the Court held that a Massachusetts law restricting U.S. companies doing business in Burma was preempted by Congressional legislation.

The Act of State Doctrine, which precludes United States courts from judging the validity of a foreign sovereign's official acts, also bars adjudication of Plaintiffs' claims. *See W. S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.*, 493 U.S. 400, 405 (1990). Under the Act of State Doctrine, a claim is barred if it (1) involves an official act of a foreign sovereign; (2) is performed within its own territory, and (3) it seeks relief that would require the court to sit in judgment on the sovereign's official acts. *Id*. at 405. Plaintiffs claim that Israel's official policy violates international law and also that orders were given to a bulldozer operator to continue with the demolitions even when protestors were present. (First Amended Complaint ¶ 59.) Military orders are official acts of the sovereign. *Roe v. Unocal*, 70 F. Supp. 2d 1073, 1079 (C. D. Calif.).

Plaintiffs respond that none of the *Baker* factors apply and that merely because this cause of action arises in the context of the Israeli-Palestinian conflict, that is no basis for this court to find the

ORDER - 16

case non-justiciable.  Also, the Act of State Doctrine does not apply, because the acts did not occur within Israel's own territory, but in the occupied territory disputed by the Palestinians.

        Plaintiffs arguments are not persuasive.  For this Court to order Caterpillar to cease supplying products to Israel would certainly invade the foreign policy prerogatives of the political branches of government.  As Caterpillar states and this court agrees: "This lawsuit challenges the official acts of an existing government in a region where diplomacy is delicate and U.S. interests are great." (Caterpillar Reply p. 35.)  This cause of action must be dismissed.

        NOW, THEREFORE, IT IS ORDERED:

1.    Defendant Caterpillar's Motion To Dismiss [Dkt. # 22] is GRANTED;

2.    Defendant Caterpillar's Request for Judicial Notice [Dkt. # 25] is GRANTED;

3.    Plaintiffs' Requests in its Surreply [Dkt. # 45] are DENIED;

4.    Defendant Caterpillar's Motion that the Court Solicit the View of the United States Department of State [Dkt. # 47] is DENIED in view of the Court's granting Caterpillar's Motion to Dismiss.

5.    This cause of action is DISMISSED, and the Clerk shall enter JUDGMENT accordingly.

DATED this 22nd day of November, 2005.

                                    FRANKLIN D. BURGESS
                                    UNITED STATES DISTRICT JUDGE

ORDER - 17